UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CRUZ,<br><br>    Plaintiff,<br><br>    v.<br><br>STARBUCKS CORPORATION, et al.,<br><br>    Defendants. | Case No. C-10-01868 JCS<br><br>**ORDER RE MOTION FOR AWARD OF ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS**<br><br>Re: Docket No. 72 |

## I. INTRODUCTION

Plaintiff Robert Cruz brought this action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA") and California state law. Having prevailed in the action, Cruz now brings a Motion For An Award of Attorney Fees, Litigation Expenses and Costs ("the Motion") pursuant to § 505 of the ADA, California Civil Code Section 55 and California Code of Civil Procedure § 1021.5. Plaintiff requests $187,020.00 in attorney fees and costs. The Court finds that the Motion is suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED in part and DENIED in part and Plaintiff is awarded $145,960.07 in attorneys' fees and $3,960.50 in costs.[1]

## II. BACKGROUND

### A. The Underlying Action

This action was initiated by Robert Cruz, who is physically disabled and requires the use of a wheelchair, based on the allegation that he was denied full and equal access to a Starbucks coffee shop, located at 4096 - 18th Street in San Francisco. He sought damages and injunctive relief and

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

obtained both. In particular, Plaintiff's lawsuit resulted in: 1) a Consent Decree under which Defendants agreed to take remedial measures to ensure access; and 2) an agreement for Defendants to pay statutory damages in the amount of $43,000. *See* Declaration of Paul L. Rein in Support of Plaintiff's Motion for an Award of Attorney Fees, Litigation Expenses, and Costs ("Rein Motion Decl.") ¶¶ 5-6.

The Consent Decree was entered by the Court on September 21, 2011 and the corrective measures set forth in it were to be completed by March 15, 2012. *See* Declaration of Terrie Tate in Support of Defendants' Motion to Continue Consent Decree Deadlines ("Tate Decl."), ¶ 5. After that deadline had passed, on March 22, 2012, Defendants informed Plaintiff, for the first time, that they would not be able to complete the construction on time because the corrective measures required more structural work than anticipated. Declaration of Shane Singh to Support Defendants' Motion to Continue Consent Decree Deadlines ("Singh Decl."). There is evidence in the record that Defendants had been aware of the problem in late January of 2012, when they received plans from their architects for the corrective work, but had not given Plaintiff timely notice as required under the Consent Decree. Tate Decl., ¶ 7.

In May 2012, Defendants brought a motion to continue the consent decree deadlines. At that point, Defendants anticipated that construction -- which had not yet begun -- would commence on August 5, 2012 and would be completed by the end of August. Tate Decl., ¶ 12. Plaintiff opposed the motion citing, *inter alia*, Defendants' failure to comply with the notice requirements of the Consent Decree. The Court granted the motion and continued the deadline for completion to August 31, 2012, but cautioned Defendants "to abide by all of the terms of the Consent Decree -- particularly those relating to notice -- and to timely notify both Plaintiff and this Court of any possible future delays within 15 days of their discovery and *prior* to the expiration of the August 31, 2012 deadline." Docket No. 69. As of December 31, 2012, the parties agreed that all of the corrective measures required under the Consent Decree had been completed. Declaration of Catherine Cabalo in Support of Plaintiff's Motion for an Award of Attorney Fees, Litigation Expenses, and Costs ("Cabalo Motion Decl.") at 10.

**B. The Motion**

In the Motion, Plaintiff seeks fees for work performed in this action by attorneys Paul Rein, Celia McGuiness, and Catherine Cabalo, and by paralegal Aaron Clefton. Motion at 24. In particular, Plaintiff requests the Court award fees as follows:

>Paul Rein, Esq. 147.6 hrs. @ $645/hr. = $95,202
>
>Celia McGuinness, Esq. 7.5 hrs. @ $495/hr. = $ 3,712
>
>Catherine Cabalo, Esq. 141.7 hrs. @ $425/hr. = $ 60,222
>
>Aaron Clefton, Senior Paralegal 49.9 hrs. @ $200/hr. = $ 9,980
>
>Total attorney fees: $169,116

*Id*. Plaintiff has provided the declarations of Rein, McGuiness, Cabalo and Clefton, as well as their timesheets, in support of his request. In addition, he has provided declarations by civil rights attorneys Christopher Whelan and Sid Wolinsky addressing the reasonableness of the time and rates sought by Plaintiff in this action, as well as declarations by Larry Paradis, Brian Gearinger and John Burris that were submitted in other actions addressing the reasonableness of the rates sought by Plaintiff's counsel.

>Plaintiff also seeks an award of the following litigation expenses:
>
>Filing fees $ 350.00
>
>Service of process, courier services $ 297.50
>
>Federal Express (overnight/mail services) $ 50.23
>
>Copying costs $ 1,431.18
>
>Westlaw computer research $1,286.69
>
>Other (Hotel/motel/mileage for site inspection, court appearances, mediation, investigation, photos) $ 116.40
>
>access consultant Karl Danz $735
>
>access consultant Peter Margen (including formal site inspection, subsequent report, and later reinspection and report) $3,313.
>
>Total litigation expenses and costs $7,580.00

1 Rein Motion Decl., ¶ 35.

**C. The Opposition**

In their opposition, Defendants outline the history of the case and suggest that Plaintiff unnecessarily increased the fees incurred in the action by opposing Defendants' request that the Consent Decree deadline be continued. Opposition at 4. Defendants do not dispute that Plaintiff is entitled to reasonable fees and costs for the work of counsel and his experts on this case, whether incurred before or after the parties entered into the Consent Decree. However, they have submitted an expert report by James Schratz, whose firm conducts audits involving plaintiff fee requests in cases where fee-shifting is permitted, in which numerous specific objections to Plaintiff's fees and costs are raised. Declaration of James P. Schratz in Support of Defendants' Opposition to Motion for Attorney's Fees ("Schratz Decl.") ¶¶ 1, 4, 5. Defendants incorporate the arguments of Schratz into their Opposition.

Schratz asserts that Plaintiff's fees should be reduced as follows:[2]

- Block billing: 2% reduction for total fees sought on the ground that time sheets include block-billed entries. Schratz Decl., 9-13.

- Hourly Rates: reduction by $38,098.00 based on reduction in hourly rates to $495/hour (Rein), $395/hour (McGuiness), $330/hour (Cabalo), $165/hour (Clefton).[3] *Id*. at 13-20.

- Overstaffing and Duplicate attendance at proceedings: reduction by $859.50 based on duplicate attendance at proceedings. *Id*. at 20-21.

- Excessive Conferencing: reduction by $17,516.50 for excessive conferencing among Plaintiff's attorneys. *Id*. at 20-24.

- Excessive Drafting Time: 10% reduction in total fees for excessive time spent drafting

---

[2] The objections in the Schratz Declaration address only the fees requested in the Motion. The Court assumes that these objections also apply to the additional fees requested by Plaintiff in the Reply brief (discussed below).

[3] In the Schratz Decl. at 20, the proposed rate for Aaron Clefton is stated as $100.00/hour. It is apparent from the total recommended fees for Clefton that this is a typographical error and that Defendants are seeking the paralegal rate of $165.00/hour that was approved for Mr. Clefton in *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1085 (N.D. Cal. 2010).

4

1 complaint, opposition to motion to continue consent decree deadlines and fee motion.
2 *Id*. at 24-35.
3 Schratz also asserts that Plaintiff is seeking $3,532.00 in litigation expenses and opines that this amount should be reduced to $647.50, to cover the process server fee and filing fee only because there is insufficient information provided as to: 1) copy costs (specifically, the cost per page); 2) research and investigation (allegedly "lacks any supporting information as to date of service, matter researched, or its purpose or relationship to the case"); 3) Federal Express/overnight mail costs ("a showing of need for expedited service is helpful"); 4) local travel costs (generally not recoverable and sparsely documented). *Id*. at 35-36. Mr. Schratz does not address Plaintiff's request for fees incurred by access experts Peter Margen and Karl Danz.[4]

### D. The Reply

In his Reply, Plaintiff objects to the Schratz declaration and opposition brief on numerous grounds. As to the brief itself, Plaintiff notes that it is replete with factual representations but is unsupported by a sworn declaration verifying those facts. Reply at 1. Therefore, Plaintiff requests that all of the factual representations in the opposition brief be stricken.[5] *Id*. Plaintiff asserts that the Schratz declaration is improper because Schratz has not demonstrated that he has experience with fee awards in disability access cases or familiarity with the prevailing rates for disability access attorneys practicing in the Northern District of California. *Id*. at 2. Further, Plaintiff contends the factual allegations in the Schratz declaration regarding the background of the instant action are improper because they are not based on personal knowledge. *Id*. Therefore, Plaintiff

---

[4] Mr. Schratz erroneously states in his report that the total computed costs claimed amount to $3,532.00. Schratz Decl. ¶ 24. He acknowledges that the fee petition seeks $7,580.00 in costs but states that "[t]he reason for the difference in costs is unknown." *Id*. In fact, the basis for Plaintiff's request for $7,580.00 in costs is clearly set forth in Mr. Rein's declaration, in which he explains that the total litigation expenses *other than experts* is $3,532.00. Rein Motion Decl., ¶ 35. The documentation for these expenses is contained in Exhibit 12 to the Rein Motion Decl. Mr. Rein goes on to state that the cost for the services of access consultant Karl Danz was $735 and for the services of access consultant Peter Margen was $3,313. *Id*. The documentation for these costs is found at Exhibit 13 to the Rein Motion Decl. "Accordingly," he states, "plaintiff's total litigation expenses and costs for the Rein Law Office are $7,580.00." *Id*. Thus, the discrepancy that Mr. Schratz was unable to explain is accounted for by the $4,048.00 sought by Plaintiff for the services of access experts Danz and Margen.

[5] The Court does not rely on Defendants' characterization of the facts in their opposition brief and therefore need not rule on Plaintiff's request.

asks the Court to strike both the factual representations and the conclusions contained in the Schratz declaration.[6] *Id*.

With respect to the proposed reductions set forth in the Schratz Declaration, Plaintiff argues that they should be rejected for the following reasons:

- Block billing: Plaintiff contends block billing was not used and that the method Schratz used for determining whether block billing was used -- a computer program that detects entries that use semi-colons but does not take into account the nature of the task being described or the amount of time billed for the task -- is absurd and arbitrary. *Id*. at 10.

- Hourly rates: Plaintiff asserts that Schratz fails to address the multiple declarations he has provided by experienced civil rights attorneys who practice in the local market attesting that the rates sought are reasonable when viewed in light of the prevailing rates in the San Francisco Bay area for similar work by counsel with comparable qualifications. *Id*. at 7. Plaintiff notes that Judge James recently approved the same rates that are sought in this case in *Delson v. CYCT Management Group, Inc.*, N.D. Cal. Case No. C-11-3781, filed April 30, 2013. *Id*.

- Overstaffing and Duplicate attendance at proceedings: Plaintiff contends that staffing choices made by his counsel were reasonable and that in any event, the court generally should not second-guess the staffing decisions of a lawyer who prevails in an action. *Id*. at 8.

- Excessive Conferencing: Plaintiff asserts that the amount of conferencing among attorneys was reasonable and that the 4% benchmark cited by Schratz is arbitrary and unsupported by any authority. *Id*. at 9-10.

- Excessive Drafting Time: Plaintiff rejects Schratz's assertion that the time billed for

---

[6] The Court does not rely on Schratz's characterization of the facts of this case and therefore need not rule on Plaintiff's request that the factual representations in the Schratz declaration be stricken. With respect to Schratz's conclusions, the Court overrules Plaintiff's objection on the ground that the background set forth in the declaration regarding Mr. Schratz's experience in the area of fee audits is sufficient to satisfy the requirements of Rule 702 of the Federal Rules of Evidence.

1 drafting documents and for responding to the motion to continue the consent decree
2 deadline was reasonable. *Id*. at 13.
3 Plaintiff also rejects Schratz's challenges to his cost request, arguing that Schratz's discussion of
4 this issue is "replete with errors." *Id*. at 15.
5       Finally, Plaintiff requests an additional $17,904 for work by Plaintiff's counsel (24.4 hours
6 by Rein and 8.8 hours by Cabalo) in connection with the Reply brief and Plaintiff's Motion to
7 Strike. *Id*. at 16; *see also* Supplemental Declaration of Paul L. Rein in Support of Plaintiff's
8 Motion for an Award of Attorney Fees, Litigation Expenses, and Costs ("Rein Reply Decl.");
9 Supplemental Declaration of Catherine Cabalo in Support of Plaintiff's Motion for an Award of
10 Attorney Fees, Litigation Expenses, and Costs ("Cabalo Reply Decl.").

## III. ANALYSIS

### A. Legal Standard[7]

The calculation of a reasonable fee award involves a two-step process. *Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates the presumptive fee award, also known as the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975) that were not taken into account in the initial lodestar calculation. *Intel Corp. v. Terabyte Intern., Inc*., 6 F.3d 614, 622 (9th Cir. 1993) (citing *D'Emanuele v. Montgomery Ward & Co., Inc*., 904 F.2d 1379, 1383 (9th Cir.1990), overruled on other grounds by *Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)).

The Kerr factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6)

---

[7] Defendants do not dispute that Plaintiff has prevailed in this action and is entitled to an award of attorney fees and costs under the ADA and California law. Therefore, the Court addresses only the reasonableness of the fees and costs requested by Plaintiff.

whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr,* 526 F.2d at 70. The Ninth Circuit has cautioned that there is a "strong presumption" that the lodestar figure represents a reasonable fee and that adjustment upward or downward is "the exception rather than the rule." *D'Emanuele*, 904 F.2d at 1384.

### B. Reasonableness of Fees Requested

#### 1. Hourly Rates of Counsel and Paralegal

"The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987). "Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. *See, e.g., Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009).

As noted above, Plaintiff requests that fees be awarded at the following hourly rates: Paul Rein, Esq. at $645/hr.; Celia McGuinness, Esq. at $495/hr.; Catherine Cabalo, Esq. at $425/hr.; and Aaron Clefton, Senior Paralegal, at $200/hr. Based on the declarations provided in support of these rates and other decisions from this district involving attorneys with comparable experience in the field of disability access who practice in the San Francisco Bay area, the Court finds the attorney rates to be reasonable. The Court concludes that a reasonable rate for Aaron Clefton is $175/hour.[8]

---

[8] The Court finds no authority from the Ninth Circuit that supports Schratz's assertion that attorneys who practice at small firms should be awarded fees at lower rates than are awarded to

a. Paul Rein

Paul Rein is a 1968 honors graduate of Boalt Hall who has more than 44 years of litigation experience, 38 of which have been spent representing disabled persons. Rein Motion Decl., ¶ 1. Rein "has published numerous articles in the disabled access field, has lectured to many attorneys and law students and has handled successful litigation which required building modifications to provide access for disabled persons to a variety of facilities including banks, hotels, airlines, theaters, universities, gasoline service stations, supermarkets, restaurants, hospitals and offices." *Blackwell v. Foley*, 724 F.Supp.2d 1068, 1083 (N.D. Cal. 2010) (quoting Judge Claudia Wilken in August 10, 2004 Order, *George v. Bart*, Northern District of California Case No. C-00-2206, Docket No. 160). The reasonableness of the rate requested for Mr. Rein is supported by the declarations of several experienced attorneys in the field of disability access. *See* Rein Motion Decl., Ex. 9 (Declaration of Sid Wolinsky), Ex. 10 (Declaration of John Burris), Ex. 11 (Declaration of Christopher Whelan), Ex. 15 (Declaration of Laurence Paradis). In addition, the requested rate for Mr. Rein was found to be reasonable in an April 30, 2013 order awarding fees in a disability access case, *Delson v. Cyct Management*, 2013 WL 1819265 (N.D.Cal., April 30, 2013). The Court finds the requested rate of $645/hour for Rein to be reasonable.

b. Celia McGuiness

McGuiness graduated from Hastings College of the Law in 1991 and has been a trial lawyer for approximately 22 years. Declaration of Celia McGuiness in Support of Plaintiff's Motion for Award of Attorney Fees, Litigation Expenses, and Costs ("McGuiness Decl.") ¶ 2. She has been an associate at the Rein Law Office since 2008. *Id*. ¶ 3. She has tried at least 25 cases, published in legal journals and newspapers and taught at Hastings College of the Law and USF Law School. *Id*. ¶ 5. Plaintiff has submitted the Declaration of Brian Gearinger in Support of Plaintiff's Motion for Award of Attorney Fees, Litigation Expenses, and Costs ("Gearinger Decl.") in support of the reasonableness of the $495/hour rate requested for McGuiness. In addition, Plaintiff has cited cases in which courts have awarded higher rates for work by local

---

attorneys who practice at large firms. Nor does the Court find Defendants' position on this question to be persuasive.

9

attorneys practicing in the area of disability access with fewer years of experience than McGuiness. *See, e.g., Elder v. National Conference of Bar Examiner*, 2011 WL 4079623 (N.D. Cal., September 12, 2011)(finding $535/hour and $640/hour reasonable for attorneys Anna Levine and Scott La Barre, who completed law school in 2003 and 1993, respectively); *Armstrong v. Brown*, 805 F.Supp.2d 918 (N.D.Cal., 2011)(finding $510/hour reasonable for an associate who was a 2003 law school graduate). The Court finds the requested rate of $495/hour to be reasonable.

### c. Catherine Cabalo

Catherine Cabalo graduated in 2001 from University of Washington School of Law. Declaration in Support of Plaintiff's Motion for Award of Attorney Fees, Litigation Expenses, and Costs ("Cabalo Decl.") ¶ 3. She has been a litigator for 12 years. *Id*. During the last three years, Cabalo has worked at Rein Law Office and has handled disability access cases exclusively. *Id*. Plaintiff has submitted the declaration of Brian Gearing stating that the requested rate of $425/hour is reasonable and consistent with market rates for an attorney with Cabalo's experience. Gearinger Decl. ¶ 7. In addition, Plaintiff has cited cases in which courts have found reasonable comparable or higher rates for attorneys with similar experience. *See, e.g., Elder v. National Conference of Bar Examiner*, 2011 WL 4079623 (N.D. Cal., September 12, 2011) (finding $535/hour reasonable for attorney Anna Levine, who completed law school in 2003). The Court finds the requested rate of $425.00/hour to be reasonable.

### d. Aaron Clefton

Aaron Clefton is a senior paralegal at the Rein Law Office, where he has worked for the past eight years. *See* Declaration of Aaron Clefton in Support of Plaintiff's Motion for Award of Attorney Fees, Litigation Expenses, and Costs (" Clefton Decl.") ¶¶ 1, 5. Judge James, of this Court, recently found that an hourly rate for Clefton of $175/hour is reasonable, stating as follows:

> The Court has reviewed Mr. Clefton's Declaration setting forth his education and experience and has also reviewed both the cases Plaintiff has cited, as well as other published decisions analyzing the reasonableness of Mr. Clefton's billing rate. Based on its review, the Court finds that Mr. Clefton's hourly rate should be set at $175 an hour, which represents a $10 increase from the $165 rate approved by other district courts in 2010 and 2011. See *Luna v. Hoa Trung*

*Vo*, 2011 WL 2078004, at *11 (E.D. Cal. May 25, 2011*); Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1082, 1085 (N.D. Cal. 2010).

*Delson v. Cyct Management Group, Inc.*, 2013 WL 1819265, at *5 (N.D.Cal., April 30, 2013). The undersigned agrees with the conclusion of Judge James and therefore calculates Plaintiff's fee award using a rate of $175/hour for the time billed by Aaron Clefton.

**2. Time**

a. Block Billing

Defendants' expert requests a 2% reduction in Plaintiff's fee award on the ground that block-billing was used. Block-billing is discouraged as it makes it more difficult for the court to determine whether the time spent on particular tasks was reasonable. *Elder v. National Conference of Bar Examiners*, 2011 WL 4079623, at *2 n.2 (N.D.Cal., Sept. 12, 2011). For example, where a block-billed entry includes both compensable and non-compensable tasks, it may be necessary to exclude the entire time billed because it is impossible to determine how much of the time billed was allocated to the non-compensable task. *See, e.g., Pande v. ChevronTexaco Corp.*, 2008 WL 906507, at *8 n. 5 (N.D.Cal., April 1, 2008)(excluding time for block-billed entries where some but not all tasks listed in block-billed entries were non-compensable). Here, however, Schratz has not pointed to any such entry. Further, the Court has reviewed the time sheets provided by Plaintiff and finds that the billing practices with respect to block-billing are adequate to allow the Court to determine whether the time spent on particular tasks is reasonable. Therefore, the Court declines Defendants' request that the fee award be reduced on this basis.

b. Overstaffing and Duplicate Attendance

Schratz points out that Plaintiff, at times, had three attorneys working on this action and states that this is "simply too much staffing." Schratz Decl. at 21. Schratz points to two specific examples: attendance by both Rein and Cabalo at the September 26, 2011 mediation, and attendance by Rein and Clefton at the April 27, 2012 Case Management Conference. *Id*. For each of these, Defendants request that the fee award reflect a reduction in fees for the second timekeeper, that is, that fees for Cabalo's attendance at the mediation be reduced from $3,187.50 (the requested amount) to $2,475.00 and that fees for Clefton's attendance at the Case Management Conference be reduced from $840.00 (the requested amount) to $693.00. *Id*.

The Court does not find that it was unreasonable for Plaintiff's two lead attorneys to participate in the mediation, which is an important point in the litigation, especially in light of Rein's supplemental declaration addressing the division of labor in his law office as between damages and injunctive relief. *See* Rein Supp. Decl., ¶ 4; *see also Chabner v. United of Omaha Life Ins. Co.*, 1999 WL 33227443, at *4 (N.D.Cal., October 12, 1999) (finding it reasonable for two attorneys to attend summary judgment hearings because they were "pivotal points" in the litigation). However, Plaintiff has not offered any explanation for the need for paralegal Aaron Clefton to accompany Rein to the Case Management Conference. Therefore, the Court grants Defendants' request that the fee award be reduced by $147.00 on this basis.

### c. Excessive Conferencing

Schratz reviewed Plaintiff's time sheets, manually counting the time entries devoted to conferring between counsel, and determined that the time billed includes excessive conferencing. Schratz Decl. at 22. In particular, he found that the following percentages of Plaintiff's requested fees were billed for conferencing: Paul Rein, 21%; Celia McGuiness, 47%; Cat Cabalo, 9%, Aaron Clefton 22%. *Id*. He recommends that the fee award be reduced to exclude fees for conferencing in excess of 4% of total fees sought for each timekeeper. *Id*. at 23-23. The Court is reluctant to second-guess the staffing decisions of Plaintiff's counsel, given that the approach taken by counsel was successful. Further, the Court finds no authority that suggests that it would be appropriate to follow a bright-line rule as to the percentage of conferencing that is reasonable in any particular case. Nonetheless, having reviewed the time sheets provided by Plaintiff, the Court is troubled by the fact that nearly half of the time billed by McGuiness was spent in meetings and conferences with co-counsel and Rein spent over 20% of his time in conferences with co-counsel. The Court finds that a 37% reduction in fees for McGuiness, that is, a reduction of $1,373.33, is appropriate on this basis. The Court finds that an 11% reduction in the fees for Rein (excluding those spent on the Reply brief)[9], that is, a reduction of $10,472.22, is appropriate.

### d. Excessive Drafting Time

---

[9] The Court has reviewed the time sheets documenting the time spent by Rein on the Reply brief and finds that the time billed for communications with co-counsel is reasonable.

12

Defendants seek a reduction in fees on the basis that as to certain tasks, the time billed by Plaintiff was excessive. The Court finds that some reductions are appropriate on this ground, though it does not adopt all of Defendants' proposed reductions.

i. Complaint

Plaintiff billed 3.8 hours of Rein's time and .70 hours of paralegal time for drafting the complaint. While Defendants point out that the complaint is similar to one filed in another case in which the plaintiff was represented by the Rein Law Office, the Court does not find this time to be unreasonable given the importance of the initial complaint to Plaintiff's ultimate success. Therefore, the Court denies Defendants' request to reduce the fee award on this basis.

ii. Opposition to Motion to Continue

Defendants assert that Plaintiff multiplied litigation expenses by unreasonably opposing their ex parte and noticed motions to continue the Consent Decree deadline. To the extent that Defendants had already violated the terms of the Consent Decree by waiting almost two months to notify Plaintiff of the problem it had encountered -- and that they did not request an extension until *after* the deadline for completion of all the work agreed to under the Consent Decree had already passed, the Court cannot find that it was unreasonable for Plaintiff to oppose Defendants' motions. Nonetheless, the Court has reviewed the time sheets provided by Plaintiff and finds that the total time billed for Plaintiff's opposition to Defendants' ex parte and noticed motions seeking an extension of the Consent Decree deadline -- 40.3 hours, accounting for $17,414.50 in fees -- is excessive given that the issues raised were relatively uncomplicated. Accordingly, the Court reduces Plaintiff's fee award by $8,707.25, that is, 50% of the fees incurred for drafting the opposition to Defendants' motions to continue.

iii. Fee Motion

Defendants assert that the total time billed for the fee motion, 30.8 hours, resulting in fees in the amount of $15,942.50, is also excessive. The Court agrees. The vast majority of fees on the motion, 18.3 hours, were billed by Rein. While the Court does not wish to second-guess the decision to give the leading oar in drafting the fee motion to the attorney with the highest billing rate, the time spent by Rein is unreasonable in light of his extensive experience and the fact that

13

the fee motion does not present any legal or factual issues that are particularly new or complicated. Accordingly, the Court reduces Plaintiff's fee award by $7,971.25, that is, 50% of the fees incurred for drafting the fee motion.

                        iv. Reply Brief and Motion to Strike

Plaintiff requests an additional $17,904 in attorney fees for work spent on the Reply brief on the fee motion and the motion to strike filed concurrently with the Reply brief. This amount is based on $14,164 for Rein's time (reduced from $15,738 as an exercise in billing judgment) and $3,740 for Cabalo's time. The Court reduces the amount requested on the grounds that: 1) the motion to strike was not in compliance with the Local Rules, as explained in the Court's separate order, and therefore time spent on that motion is not recoverable; and 2) the time billed for the Reply brief on the fee motion is excessive.

A review of the time sheets indicates that Rein billed $709.50 and Cabalo billed $3,612.50 for work on the motion to strike. Given that Plaintiff, as an exercise of billing judgment, reduced by 10% the amount sought for Rein's work on the Repy brief and motion to strike, the fees requested for Rein's work that are attributable to the motion to strike amount to $638.55. Therefore, the Court reduces the fees requested in Plaintiff's Reply brief by that amount. The Court also excludes the full $3,612.50 in fees incurred by Cabalo in connection with the motion to strike because no reduction based on billing judgment was made by Plaintiff for Cabalo's time.

With respect to the Reply brief, the time sheets submitted by Plaintiff reflect that Rein billed 23.3 hours on that brief, that is $15,028.5 (less the 10% reduction in the exercise of billing judgment, bringing the requested amount for this time down to $13,525.65), while Cabalo billed .6 hours, that is $255.00, on the Reply brief. While the lengthy report submitted by Defendants' expert raised numerous issues that required Plaintiff to respond, the Court finds this time to be excessive in light of the issues raised and counsel's experience. Further, the Court notes that at least one issue addressed at some length in the brief -- Defendants' request for an extension on the time to file their opposition brief -- is not relevant to any significant issue before the Court. Accordingly, the Court reduces the fees requested by Plaintiff for the Reply brief by 50%, that is, $6,890.33, on this basis.

### C. Summary of Reductions and Total Fee Award

The fees requested in the Motion, in the amount of : $169,116, are subject to the following reductions:

- - $1,247.50 (for reduction of Clefton hourly rate from $200/hour to $175/hour for 49.9 hours of work)
- - $147.00 (for Clefton attendance at Case Management Conference)
- - $1,373.33 (37% reduction in fees for McGuiness due to excessive conferencing)
- - $10,472.22 (11% reduction in fees for Rein due to excessive conferencing)
- - $ 8,707.25 (50% reduction of fees requested for drafting opposition to Defendants' motion to continue Consent Decree deadline)
- - $ 7,971.25 (50% reduction of fees requested for drafting fee motion)

The additional fees requested in Plaintiff's Reply brief, in the amount of $17,904.00, are subject to the following reductions:

- - $ 638.55 (for work by Rein on Motion to Strike)
- - $ 3,612.50 (for work by Cabalo on Motion to Strike)
- - $ 6,890.33 (50% reduction in fees for work on Reply brief)

With these reductions, the Court awards $ 145,960.07 in attorney fees.

### D. Costs

Plaintiff has requested the following costs: 1) Filing fees - $ 350.00; 2) Service of process, courier services - $ 297.50; 3) Federal Express (overnight/mail services) - $ 50.23; 4) Copying costs - $ 1,431.18; 5) Westlaw computer research $1,286.69; 6) Other (Hotel/motel/mileage for site inspection, court appearances, mediation, investigation, photos) - $ 116.40; 7) access consultant Karl Danz - $735; 8) access consultant Peter Margen (including formal site inspection, subsequent report, and later reinspection and report) - $3,313.

Defendants have not objected to Plaintiff's request for filing fees and service of process and courier fees, which the Court finds to be reasonable and awards in full, in the amount of $647.50.

Defendants also have not objected to Plaintiff's request for expert fees in the amount of $3,313 for access consultant Peter Margen and $735 for consultant Karl Danz.   Expert consultant fees

1   may be awarded to a prevailing party under the ADA. *Blackwell v. Foley*, 724 F. Supp. 2d 1068,
2   1073 (N.D. Cal. 2010). Further, as to Margen, Plaintiff has provided a copy of a detailed site
3   report, an email listing access problems found during a subsequent inspection, invoices
4   documenting Margen's work, and a copy of Margen's CV. *See* Rein Motion Decl., Exs. 5, 12, 13,
5   14. Based on this evidence, the Court finds that Plaintiff's request for Margen's fees is adequately
6   supported and reasonable. Therefore, the Court awards Plaintiff $3,313 for the costs associated
7   with Margen's services. On the other hand, the only information provided as to Danz is that he
8   billed $735 in this action. *See* Rein Motion Decl. ¶ 35. The Court cannot determine whether this
9   amount is reasonable in the absence of any information about the services Danz provided.
10  Therefore, the Court does not award this cost.

Similarly, the Court denies Plaintiff's request for copying costs and legal research costs on the basis that these costs are inadequately documented. In particular, although the Clefton Declaration states that in-house copying costs of $1,431.18 were incurred in this action and that legal research costs were incurred in the amount of $1,286.69, *see* Clefton Decl. ¶¶ 12-13, Clefton does not provide the cost billed per page, the number of pages, any information about the documents that were copied, the amount of time devoted to legal research, or any break-down of the tasks that required legal research. Because the Court cannot determine whether the requested copying and legal research costs are either allowable or reasonable, it declines to award these requested costs. *See Payne v. Bay Area Rapid Transit Dist*., 2009 WL 1626588, at *9 (N.D.Cal., June 05, 2009) (declining to award copy costs or legal research costs where Plaintiff failed to provide sufficient information to allow the court to determine whether the amount requested was reasonable).

Finally, Plaintiff has not cited authority indicating that his various miscellaneous expenses, which include but are not limited to local travel, are allowable. Accordingly, Plaintiff's request for those costs is denied.

The Court therefore awards $3,960.50 in costs.

## IV. CONCLUSION

For the reasons stated above, the Court awards $145,960.07 in attorney fees and $3,960.50 in costs.

**IT IS SO ORDERED**.

Dated: June 5, 2013

JOSEPH C. SPERO
United States Magistrate Judge